UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| COURTNEY P.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. 2:19-cv-335 ) |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the court on a referral for a Report and Recommendation on the petition for judicial review of the decision of the Commissioner filed by the plaintiff, Courtney P., on September 5, 2019. For the following reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED.**

*Background*

On September 2, 2016, an application for Supplemental Security Income was filed on behalf of the plaintiff, Courtney P., who was a child under the age of 18. (Tr. 91). The Disability Determination Bureau denied Courtney P.'s application initially on November 1, 2016, and again upon reconsideration on January 10, 2017. (Tr. 91). Courtney P. subsequently filed a timely request for a hearing on February 8, 2017. (Tr. 91). A hearing was held on June 19, 2018, before Administrative Law Judge (ALJ) Janet Akers, and the ALJ issued an unfavorable decision on October 11, 2018. (Tr. 91-108). Vocational Expert (VE) Tammie C. Donaldson appeared at the hearing. (Tr. 91). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Courtney P. was a child under the age of 18 at the time the application was filed. (Tr. 91). She attained age 18 on April 13, 2017, before the date of the ALJ's decision. (Tr. 91, 96). The ALJ applied the rules pertaining to both childhood disability and adult disability in her decision. (Tr. 91-108).

At step one of the three-step sequential analysis for determining whether an individual under the age of 18 is disabled, the ALJ found that Courtney P. had not engaged in substantial gainful activity since September 2, 2016, the date the application was filed. (Tr. 96).

At step two, the ALJ determined that Courtney P. had the following severe impairments: mood disorder, bipolar disorder, generalized anxiety disorder, adjustment disorder with mixed anxiety and depression, and borderline intellectual functioning. (Tr. 96).

At step three, the ALJ concluded that Courtney P. did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Part A or B. (Tr. 96). The ALJ indicated that Courtney P.'s impairments, considered singly and in combination, did not meet listings 112.04, 112.05, 112.06, or 112.15. (Tr. 96). In making this finding, the ALJ indicated that the listings required significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

> understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.

(Tr. 96). The ALJ found no evidence of extreme limitations. (Tr. 96). The ALJ determined that Courtney P. had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and no limitations in adapting or managing herself. (Tr. 96).

2

The ALJ also considered whether Courtney P.'s impairment or combination of impairments functionally equaled the listings. (Tr. 97). The ALJ concluded that, before attaining the age of 18, Courtney P. did not have an impairment or combination of impairments that functionally equaled the listings. (Tr. 97). In making this finding, the ALJ considered all symptoms and the extent to which these symptoms reasonably could be accepted as consistent with the objective medical evidence and other evidence. (Tr. 97).

The ALJ explained that in considering Courtney P.'s symptoms she followed a two-step process. (Tr. 97). First, she determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Courtney P.'s pain or other symptoms. (Tr. 97). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Courtney P.'s ability to do basic work activities. (Tr. 97). After considering the evidence, the ALJ found that Courtney P.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 98). However, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence and other evidence. (Tr. 98).

Moreover, in determining whether Courtney P.'s impairments or combination of impairments functionally equaled the listings, the ALJ considered the following domains of functioning:

> (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.

(Tr. 99). Courtney P. did not have an impairment or combination of impairments that resulted in either "marked" limitations in two of the domains of functioning or an "extreme" limitation in

3

one domain of functioning. (Tr. 99-104). Because Courtney P. did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the ALJ found that Courtney P. was not disabled prior to attaining age 18. (Tr. 104).

Since attaining the age of 18, the ALJ found that Courtney P. had not developed any new impairments. (Tr. 104). The ALJ concluded that Courtney P. continued to have a severe impairment or combination of impairments. (Tr. 104). The severity of her mental impairments, considered singly and in combination, did not meet or medically equal listings 12.04, 12.05, and 12.06. (Tr. 104). In making this finding, the ALJ considered whether the paragraph B criteria was satisfied. (Tr. 104).

The ALJ determined that Courtney P. had moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself. (Tr. 104-105). Because Courtney P.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the paragraph B criteria was not satisfied. (Tr. 105). Additionally, the ALJ determined that Courtney P. did not satisfy the paragraph C criteria. (Tr. 105)

After consideration of the entire record, the ALJ then assessed Courtney P.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple routine tasks, with only one to two step oral instructions. She can sustain concentration for work activities working in two-hour blocks of time with normal breaks. The claimant can interact frequently with the public incidental to the work being performed. She can respond appropriately to gradual changes introduced at a slower pace in a routine work setting.

4

(Tr. 105).

The ALJ found that Courtney P. had no past relevant work. (Tr. 107). Since attaining the age of 18, considering Courtney P.'s age, education, work experience, and RFC, the ALJ determined that there were jobs in the national economy that she could perform, including housekeeper cleaner (390,000 jobs nationally), bakery worker (230,000 jobs nationally), and bagger (330,000 jobs nationally). (Tr. 107). The ALJ concluded that Courtney P. had not been under a disability, as defined in the Social Security Act, from the day she turned age 18, April 13, 2017, through the date of the ALJ's decision, October 11, 2018. (Tr. 107-108).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues."

5

*Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her

6

age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f)**; *see Biestek v. Berryhill*, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Courtney P. has requested that the court reverse the ALJ's decision and remand this matter for additional proceedings.  In her appeal, she has argued that the ALJ failed to support and reasonably articulate her analysis of the RFC and her subjective symptoms.  Specifically, she has argued that:  (1) the ALJ failed to consider whether she could keep a job due to her weekly therapist appointments; (2) the ALJ did not assess her subjective symptoms pursuant to SSR 16-3p; and (3) the ALJ did not properly assess her moderate limitations in concentration, persistence, or pace and difficulties interacting with others.

Courtney P. has argued that if she obtained a job, she would be unable to retain it because of her weekly therapy sessions.  Courtney P. indicated that since June of 2017 she has attended individual therapy once a week for nearly an hour.  The VE testified that employers do not tolerate absenteeism, tardiness, or leaving early more than once a month on an ongoing basis.  (Tr. 64).  Courtney P. claimed that with her need to attend weekly therapy appointments, she would be unable to meet the minimum requirements of employment.  Thus, Courtney P. asserts that the ALJ's failure to discuss her absenteeism was reversible error.

The Commissioner responded that Courtney P.'s argument has no merit.  The Commissioner asserts that Courtney P. has failed to demonstrate that a one-hour weekly

7

appointment qualified as "too much treatment on a regular basis to allow her to maintain a steady work schedule." (DE 11, p. 12). The Commissioner contends that Courtney P.'s one-hour weekly therapy session was not work preclusive, and thus, the ALJ was not required to discuss it.

The ALJ does not need to discuss every piece of evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). However, the SSA provides guidance as to what must be considered and articulated, including:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.

Courtney P. has not established that her treatment would preclude her from sustaining work. She indicated that her sessions were once a week for nearly an hour. Neither the frequency of the sessions, nor the length of the sessions, appears to be work preclusive. Moreover, she never indicated that the scheduling of her sessions was inflexible and could not be scheduled around a work schedule. *See Gary B. v. Berryhill*, 2018 WL 4907495, at *4 (S.D. Ind. 2018) (quoting *Fieleke v. Colvin*, 2015 WL 540303, at *10 (N.D. Ind. Feb. 9, 2015)) ("It is also possible that these and other medical appointments could have been and would be able to be scheduled around a work schedule, such as on the weekends, during the lunch hour, or before or after work."). Accordingly, the court finds no reversible error on this issue.

Next, Courtney P. has argued that the ALJ failed to articulate her application of SSR 16-3p in assessing her subjective symptoms. An ALJ's evaluation of subjective symptoms will be

8

upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at*4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i) The individual's daily activities;

    (ii) Location, duration, frequency, and intensity of pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) Type, dosage, effectiveness, and side effects of any medication;

    (v) Treatment, other than medication, for relief of pain or other symptoms;

    (vi) Other measures taken to relieve pain or other symptoms;

    (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 416.929(c)(3).**

The ALJ noted that Courtney P. alleged that she had depression, anxiety, and bipolar symptoms. (Tr. 97). The ALJ indicated that at the hearing Courtney P. testified that she was unable to work because she was likely to engage in altercations with others and continued to experience symptoms of anxiety and difficulty focusing. (Tr. 97). The ALJ further noted that Courtney P. testified that she was unable to sustain concentration for the duration of a movie and had difficulty with math. (Tr. 97). Finally, the ALJ indicated that Courtney P. testified that she had friends on social media, was able to cook for herself, engage in personal care, and had no memory difficulties. (Tr. 97).

In reviewing the evidence, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical evidence and other evidence…" (Tr. 98). This language, however, is "meaningless boilerplate." ***Parker v. Astrue***, 597 F.3d 920, 922 (7th Cir. 2010).

In assessing Courtney P.'s subjective symptoms, the ALJ discussed the objective medical findings and opinion evidence to justify her conclusion that Courtney P.'s statements were not supported by the medical evidence. However, "[t]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." ***Ghiselli v. Colvin***, 837 F.3d 771, 777 (7th Cir. 2016); *see also* ***Moore v. Colvin***, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined

impairment that could reasonably be expected to produce the pain.").

Courtney P. contends that the ALJ failed to consider the factors set forth in 20 C.F.R. § 416.929(c)(3). Specifically, Courtney P. has argued that the ALJ failed to consider her side effects. She testified that her medications made her drowsy. (Tr. 40). In evaluating a claimant's symptoms, the ALJ is required to consider side effects of medication. SSR 16-3p, 2017 WL 5180304 at *7; *see also* **Flores v. Massanari**, 19 F. App'x 393, 399 (7th Cir. 2001) ("The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process."). The ALJ did not indicate a specific reason why Courtney P.'s testimony as to her side effects was not consider nor did the Commissioner address this issue.

Moreover, Courtney P. has argued that the ALJ, as required by SSR 16-3p, failed to analyze the consistency of her allegations with the record. The ALJ is not permitted to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." SSR 16-3p, 2017 WL 5180304 at *9. The decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. SSR 16-3p, 2017 WL 5180304 at *9.

The ALJ did not explain which of Courtney P.'s symptoms she found consistent or inconsistent with the evidence and how the evaluation of her symptoms led to her conclusions. *See* SSR 16-3p, 2016 WL 1119029, at *8. The ALJ is required to provide "an 'accurate and logical bridge' between the evidence and his conclusions." **Roddy v. Astrue**, 705 F.3d 631, 636

11

(7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)).  Since there is no bridge between the evidence in the record and the ALJ's conclusion that Courtney P.'s statements were not entirely consistent with the evidence, the court is left to guess which of Courtney P.'s statements are credible.  On remand, the ALJ should perform the required analysis under SSR 16-3p.

Courtney P. raised an additional issue regarding her RFC.  Because the ALJ erred in assessing her subjective symptom determination, remand is appropriate.  Proper analysis and discussion of Courtney P.'s subjective symptoms may alter the rest of the ALJ's decision, specifically the ALJ's RFC assessment.  Accordingly, the court need not address the other argument.

Based on the foregoing reasons, the court **RECOMMENDS** that the decision of the Commissioner be **REMANDED.**

Pursuant to 28 U.S.C. § 636(b)(l), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court.  The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  *Willis v. Caterpillar, Incorporated*, 199 F.3d 902, 904 (7th Cir. 1999); *Johnson v. Zema Systems Corporation*, 170 F.3d 734, 739 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corporation*, 882 F.2d 258, 260-61 (7th Cir. 1989); *United States v. Johnson*, 859 F.2d 1289, 1294 (7th Cir. 1988); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 10th day of August, 2020.

/s/ Andrew P. Rodovich
United States Magistrate Judge